UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **DALE LESTER MORRIS**, | **19-CV-10981-TGB** |
| Petitioner, | **OPINION AND ORDER DENYING (1) THE PETITION FOR WRIT OF HABEAS CORPUS; (2) THE MOTIONS FOR THE APPOINTMENT OF COUNSEL; (3) A CERTIFICATE OF APPEALABILITY; AND (4) LEAVE TO APPEAL *IN FORMA PAUPERIS*** |
| vs. | |
| **SHERMAN CAMPBELL**, | |
| Respondent. | |

Dale Lester Morris, ("petitioner"), confined at the Gus Harrison Correctional Facility in Adrian, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction for two counts of bank robbery, Mich. Comp. Laws § 750.531. For the reasons stated below, the application for a writ of habeas corpus is DENIED WITH PREJUDICE.

## I. FACTUAL BACKGROUND

Petitioner was convicted following a bench trial in the Washtenaw County Circuit Court for two bank robberies which occurred on separate days in Ypsilanti, Michigan. This Court recites verbatim the relevant

facts regarding petitioner's waiver of counsel claim from the Michigan Court of Appeals' opinion affirming his conviction, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F. 3d 410, 413 (6th Cir. 2009):

> On September 9, 2015, in the district court, defendant was arraigned on the warrant for the Bank of Ann Arbor robbery. The magistrate informed defendant that a felony complaint had been issued accusing him of committing a bank robbery on July 8, 2015, at 7 West Michigan Avenue in the City of Ypsilanti, Michigan. Specifically, the magistrate stated that defendant was accused of intending to commit the crime of larceny in a bank and putting the teller in fear for the purpose of stealing money from the bank. Defendant was informed that this was a felony charge with a maximum penalty of life in prison. The magistrate asked defendant if he understood the charge, and defendant responded affirmatively. After the magistrate read the contents of the warrant on the record, defendant objected to the warrant and the information contained in it as follows:
>
> The Defendant: Yeah, I just want it for the record that I object to this.
> The Court: Of course, a not guilty plea has been entered.
> The Defendant: Yeah, I object to the warrant and it's [sic] information, I want that on record.
> The Court: Okay, it's on record.
> The Defendant: Okay let's proceed.
>
> Additionally, the magistrate informed defendant that he had a right to remain silent, that anything he said at the proceeding could be used against him at a later proceeding, that he had a right to be represented by an attorney, and that he had a right to have an attorney appointed to him by the court if he could not afford one. The magistrate asked

defendant if he needed an attorney to be appointed, and defendant indicated that he needed a court-appointed attorney. After inquiring about defendant's financial status, the magistrate indicated that an attorney would be appointed to represent defendant. Defendant reiterated that he objected to the warrant and complaint, and the magistrate responded, "That's right, it is noted on the record."

At a subsequent proceeding on October 1, 2015, defendant was arraigned in the district court on the warrant for the Eastern Michigan University Credit Union robbery. Defendant was represented by appointed counsel at this proceeding. The judge indicated that defendant was being charged with committing a robbery at a credit union or bank located at 761 Jenness Street in the City of Ypsilanti for the purpose of stealing money. Defendant was informed that this was a felony offense that was punishable by life in prison or any term of years. The magistrate further informed defendant that he had the right to be represented by an attorney and that one could be appointed for him. After discussions with defendant, the judge indicated that an attorney would be appointed for defendant on the second bank robbery charge as well. Defendant pleaded not guilty. The second bank robbery charge was assigned a separate case number.

On October 8, 2015, a hearing was held that had been scheduled as both a preliminary examination for the first robbery charge and a probable cause hearing for the second robbery charge. At the outset, defendant's appointed counsel indicated that defendant had expressed his desire to represent himself and that defense counsel had filed a motion to withdraw. When the judge asked defendant if he wished to represent himself in the matter, defendant responded, "Yes." Defendant further indicated, "I'd like to represent myself as my constitutional right."

The district court judge then proceeded to advise defendant of his rights regarding a waiver of the right to counsel, as set forth in MCR 6.005(D). The judge asked defendant again whether he wished to have appointed counsel represent him and whether defendant wished to represent himself. Defendant affirmatively indicated that he did not want to be represented by appointed counsel and that he wanted to represent himself. The judge asked defendant if he understood that he had been charged with bank robbery in each case, that these charges were felonies, and that they were punishable by life or any term of years. Defendant responded affirmatively that he understood each of these facts. The judge asked defendant if he wanted to be represented by appointed or retained counsel, understanding the charges and penalties involved. Defendant indicated that he did not want to be represented by counsel. The judge further informed defendant that he could ask the court to be represented by counsel at any time during the proceedings if he decided that he wanted counsel. Defendant indicated that he understood this. Additionally, the judge advised defendant that "by representing yourself, there can be certain issues involved," that defendant would be held to an understanding of the law and court procedure just as the prosecution would be, and that defendant would not receive favorable treatment. Defendant indicated his understanding. Finally, the judge asked defendant if he had any questions regarding his self-representation, and defendant indicated that he did not. The judge determined that defendant would be permitted to represent himself based on the inquiry conducted with defendant. The judge also appointed standby counsel for defendant to assist in filing documents and answering any of defendant's procedural or substantive questions.

At the same hearing, the district court subsequently accepted a motion to dismiss filed by defendant in both cases. The district court adjourned both preliminary examinations to a later date in order to allow for a response to defendant's

motions by the prosecution and for the district court to address the motions at a hearing before holding the preliminary examinations.

A probable cause conference was held on November 5, 2015. As the judge was advising defendant of his rights with respect to his assertion of his right to self-representation, defendant objected to the continuing availability of standby counsel. The judge confirmed with defendant that it was defendant's desire to no longer have standby counsel and then granted his request. After being advised of the risks of self-representation, defendant confirmed that he wanted to continue representing himself.

The preliminary examinations for both bank robbery charges were conducted on November 12, 2015. The proceedings began with the preliminary examination for the Bank of Ann Arbor robbery. At the outset, the district court judge confirmed with defendant that he wished to continue representing himself as follows:

The Court: And Mr. Morris, you are wishing to represent yourself and you do not want—
The Defendant: I am representing myself—
The Court: —You do not want appointed counsel? I just want to make that clear for the record—
The Defendant: Your Honor, I have been through this several times.
The Court: All right. And you want to continue representing yourself? All right.
The Defendant: Yes sir.

The judge also advised defendant again of the potential penalties associated with the charged offense, and defendant indicated that he understood the serious nature of the charge. Defendant then launched into a drawn-out argument about why the district court lacked subject-matter jurisdiction. The district court had already denied motions to dismiss for lack

of jurisdiction made by defendant at two previous hearings. Nonetheless, the judge allowed defendant to ramble on at the beginning of the November 12 proceeding. Defendant asserted that he could file a lawsuit against the judge. Defendant concluded, "I don't have nothing else to say about this case. Police, take me out of here." The judge ordered defendant to sit down. Defendant refused to comply, and he then argued with the judge. The judge warned defendant that he would be held in contempt if he continued his course of conduct. Defendant stated, "There is nothing to talk about. I'm ready to leave." The judge informed defendant that if he left the courtroom, he would voluntarily forfeit his right to be present at the hearing. Defendant continued to argue with the judge, and he was held in contempt. The following exchange occurred:

The Court: Do you understand that if you continue to talk and you don't hold yourself in the proper decorum of this court, I will have you removed and you are violating your right to be present at this hearing[?] And this hearing will continue without you—
The Defendant: All I'm—
The Court: You may remain in the courtroom—
The Defendant: —All I'm saying is why—
The Court: —But, if you continue to talk, you will be gagged—

Defendant continued to argue with the judge. The judge denied defendant's challenge to the court's subject-matter jurisdiction and then asked defendant if he wished to remain in the courtroom, provided that he would follow the instructions and decorum of the court. The following exchange occurred at the conclusion of the judge's explanation:

The Court: If you don't want to be gagged and you refuse to stop talking when I tell you to stop, you will be removed and then you will be forfeiting your right to be in this courtroom during this hearing. But, this hearing will be conducted without you. So, you have to tell me how you want to proceed.

The Defendant: Okay. I—I believe I'm ready to go. And you—You all can conduct this hearing without me.
The Court: All right—
The Defendant: Okay—
The Court: —Please remove the Defendant.

After defendant was removed from the courtroom, the preliminary examination continued with the prosecution calling the Bank of Ann Arbor teller to testify. The district court judge determined that defendant would be bound over to the circuit court. The judge then asked to have defendant brought back to the courtroom to conduct the arraignment on the information and to "see if he wants to be present for that." The judge was subsequently informed that defendant was resisting Michigan Department of Corrections (MDOC) officers. On the record, the judge questioned an MDOC officer who was involved. The MDOC officer indicated that defendant was placed in lockup after he requested to leave the courtroom and that defendant refused to come back to the courtroom after the judge's request. The MDOC officer further indicated that he would potentially have to physically fight defendant to bring him to the courtroom and that this would pose a security risk. The judge found that defendant voluntarily rejected his opportunity to return to the courtroom to participate in the proceedings and that defendant would not be ordered to return to the courtroom because doing so would create a potential security risk. A plea standing defendant mute to the charge was entered. The prosecutor indicated that as far as he knew, defendant had received the discovery packet and that a copy of the information was typically included in the discovery packet.

The November 12, 2015 proceedings continued with the preliminary examination for the Eastern Michigan University Credit Union robbery. The judge indicated that defendant had forfeited his right to be present in the matter through his previous conduct during the proceedings that day, specifically

7

noting that defendant had voluntarily removed himself from the hearing and had refused to return for the arraignment process. The prosecutor further stated that he had also asked the MDOC officer to ask defendant again whether he wanted to participate in the second preliminary examination. Defendant refused to participate. The preliminary examination was conducted without defendant in the courtroom, and the district court judge determined that defendant would also be bound over to the circuit court on the second bank robbery charge. The prosecutor affirmatively indicated that defendant had been provided with a discovery packet and that the standard discovery packet always includes a copy of the information. The judge determined that defendant would not be forced to return to the courtroom for an arraignment for the same reasons he was not ordered to return for an arraignment on the first charge. A plea standing defendant mute to the second charge was entered.

The two bank robbery cases were joined for trial. During the course of addressing preliminary matters on the first day of trial and before any potential jurors were brought into the courtroom for voir dire, defendant asserted that he wanted a bench trial. Defendant was sworn in, and the trial court proceeded to conduct a colloquy with defendant. The trial court again advised defendant of the nature of the two bank robbery charges and the potential penalties if convicted of those offenses. The trial court also advised defendant that he had a constitutional right to a jury trial, and defendant affirmatively indicated that he understood that he had this right. The trial court further asked defendant if he understood that by giving up his right to a jury trial, the matter would proceed that morning to a bench trial. Defendant indicated that he understood. The trial court asked defendant if he was voluntarily giving up this constitutional right, and defendant responded affirmatively. Additionally, the trial court confirmed for a second time at that proceeding that defendant was knowingly choosing to represent himself. After taking

advantage of the opportunity to consult with appointed standby counsel, the trial court asked defendant how he wished to proceed. Defendant again confirmed that he was waiving his constitutional right to a jury trial. Both defendant and the prosecution signed a waiver of trial by jury form. The trial court found that defendant had been properly advised of his right to a jury trial, had been given an opportunity to consult with counsel, and had executed a valid waiver in open court of his right to a jury trial. The trial court approved defendant's request and signed the waiver form. Following the bench trial, the trial court found defendant guilty of both bank robberies. This appeal ensued.

*People v. Morris*, No. 333468, 2018 WL 3073762, at *1–4 (Mich. Ct. App.

June 21, 2018); *lv. den.* 503 Mich. 954, 923 N.W.2d 263 (2019).

Petitioner seeks a writ of habeas corpus on the following ground:

Petitioner did not validly waive his right to counsel and elect to proceed with self-representation.

## II. STANDARD OF REVIEW

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective

Death Penalty Act of 1996 (AEDPA), imposes the following standard of

review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

9

established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court's decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Michigan

Court of Appeals' plain error review of petitioner's claim is subject to the AEDPA deferential standard of review. *See Stewart v. Trierweiler*, 867 F.3d 633, 638 (6th Cir. 2017). [1]

## III. DISCUSSION

Petitioner claims that he was denied the right to counsel at the preliminary examination and at the arraignment of the information because he did not validly waive his right to counsel prior to the hearings.

A waiver of the Sixth Amendment right to counsel is valid only when it reflects "an intentional relinquishment or abandonment of a known right or privilege." *Patterson v. Illinois*, 487 U.S. 285, 292 (1988) (*quoting Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). A defendant's

---

[1] Respondent urges this Court deny this claim on the ground that it is procedurally defaulted because petitioner failed to object to the improper waiver of counsel at the trial court level. Although the Michigan Court of Appeals procedurally defaulted petitioner's claim, there is no indication that the Michigan courts require that a denial of counsel claim be preserved by a timely objection. "To qualify as an 'adequate' procedural ground, a state rule must be 'firmly established and regularly followed.'" *Walker v. Martin*, 562 U.S. 307, 316 (2011)(internal quotation omitted). The Michigan Supreme Court has indicated that a criminal defendant need not affirmatively invoke his or her right to counsel to preserve it for appellate review. *See People v. Vaughn*, 491 Mich. 642, 657, 821 N.W.2d 288 (2012) (internal citations omitted). Because the Michigan courts have not regularly followed a rule of requiring criminal defendants to object in order to preserve a denial of counsel claim, the Court declines to procedurally default this claim. *See, e.g., Neal v. Wolfenbarger*, 57 F. Supp. 3d 804, 814–15 (E.D. Mich. 2014).

waiver of his right to counsel must "be knowing, voluntary, and intelligent." *Iowa v. Tovar*, 541 U.S. 77, 88 (2004). The waiver must be "done with sufficient awareness of the relevant circumstances." *Id.* at 81 (internal quotation marks omitted). It is the criminal defendant's burden to prove that he or she "did not competently and intelligently waive" his or her right to the assistance of counsel. *Id.* at 92.

Before a criminal defendant waives his or her right to counsel, he or she "should be made aware of the dangers and disadvantages of self-representation," so that the record establishes that the defendant knows what he or she "'is doing and his choice is made with eyes open.'" *Faretta v. California*, 422 U.S. 806, 835 (1975) (*quoting Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942)). The Supreme Court, however, has not "prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel." *Tovar*, 541 U.S. at 88. The information that a criminal defendant must have in order to make an intelligent election "will depend on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding." *Id.* The failure of a district court in a federal criminal case to give a

particular prophylactic warning and conduct a particular inquiry in determining whether a defendant should be permitted to waive his or her right to counsel does not in and of itself require reversal of a conviction. *See U.S. v. McDowell*, 814 F. 2d 245, 248–49 (6th Cir. 1987). There is thus no clearly established federal law, as determined by the Supreme Court, which requires any specific colloquy to determine whether a defendant's waiver of counsel was made with "eyes open." *Mack v. Holt*, 62 F. App'x. 577, 580 (6th Cir. 2003); *See also Sullivan v. Pitcher*, 82 F. App'x. 162, 165 (6th Cir. 2003) (a formal inquiry into a defendant's desire to proceed pro se "is not a sine qua non of constitutional waiver").

Petitioner initially contends that the judge failed to comply with the requirements under M.C.R. 6.005 for obtaining a waiver of counsel. Petitioner's claim that the state trial court violated Michigan Court Rule 6.005 is not cognizable on federal habeas review, because it involves a matter of state law. *See McCallum v. Barrett*, No. 16-CV-13125, 2018 WL 1399235, at *3 (E.D. Mich. Mar. 20, 2018)(*citing Estelle v. McGuire*, 502 U.S. 62, 67-68 (1975)).

The Michigan Court of Appeals reasonably concluded that petitioner knowingly and validly waived his right to counsel.

Petitioner indicated his desire to represent himself at the arraignments on the warrant that were conducted on September 9, 2015 and October 1, 2015, although he did agree to the appointment of counsel. (Tr., 9/9/15, p. 6; Tr. 10/1/15, pp. 3–6) (ECF No. 13-2, PageID.199, ECF No. 13-3, PageID.206–209). At the October 1, 2015 arraignment, the district court judge asked petitioner whether he had previously represented himself in another case, and petitioner responded that he had. The judge advised petitioner that the charges were serious, punishable by up to life in prison, that an attorney would be more experienced than petitioner in representing him in a criminal case, and that, especially at such an early stage in the prosecution, petitioner would be better served to accept representation and receive advice from counsel as to how to proceed. The judge also advised petitioner that he could receive assistance from court-appointed counsel with a *pro se* motion to dismiss that he had wished to file. *Id*. at pp. 5–9; ECF No. 13-3, PageID.208–12.

Despite this warning, at the October 8, 2015 hearing, petitioner validly waived his right to counsel and elected to represent himself after the judge engaged in a lengthy colloquy, which was interrupted several times by petitioner, regarding the dangers and disadvantages of self-representation. Tr. 10/8/15 Tr., pp. 19–35, ECF No. 13-5, PageID.238-246). The judge advised petitioner he was charged with bank robbery, a felony punishable by life or any term of years. *Id.* at pp. 28–30, ECF No. 13-5, PageID.242–43. The judge warned petitioner that he would not be treated more favorably merely because he chose to proceed *pro se*, would be held to the same standard as the prosecution, and would be expected to understand the law and procedure. *Id.* pp. 31–32, ECF No. 13-5, PageID.244. Petitioner indicated that he understood these risks and still wished to represent himself. The judge granted Petitioner's request that he be allowed to represent himself, but also appointed standby counsel. *Id.* at pp. 34–35, ECF No. 13-5, PageID.245–46.

At subsequent proceedings, petitioner was advised of his right to counsel and the dangers of self-representation but again reaffirmed the waiver of counsel and even went so far on November 5, 2015 as to request to represent himself without the assistance of standby counsel. Tr.

10/27/15, pp. 4–6; Tr. 11/5/15, pp. 4–6; Tr. 11/12/15, p. 3; Tr. 1/6/16, pp. 3–6; Tr. 2/10/16, pp. 3–5, ECF No. 13-6, PageID.255–56, ECF 13-7, PageID.283–85, ECF No. 13-8, PageID.292, ECF 13-9, PageID.331, ECF 13-10, PageID.370–73, ECF No. 13-11, PageID.385–87.

Petitioner is not entitled to habeas relief on his claim because the Michigan Court of Appeals reasonably concluded that petitioner knowingly and intelligently waived his right to counsel at the October 8, 2015 hearing:

> The district court judge advised defendant that he had been charged with two bank robberies, that these were felony offenses, and that they were punishable by life or any term of years. The judge further informed defendant that if he chose to represent himself, he would be held to the same understanding of the law as the prosecutor and would not receive favorable treatment. Defendant indicated that he understood each of the judge's explanations, and he affirmatively expressed his desire to represent himself and to not be represented by appointed counsel. The judge also informed defendant that he could still request to be represented by counsel at any time during the proceedings. Accordingly, defendant was made aware of the nature of the charges, the applicable potential penalties (including the maximum possible sentence of life in prison), and the risk involved in self-representation. Defendant also had the opportunity to consult with his appointed counsel, who was present at the October 8, 2015 hearing and indicated at the beginning of the hearing that she had spoken with defendant and had been told that he wished to discharge appointed counsel in order to represent himself. After the judge conducted the previously described inquiry with defendant on

the record, the judge permitted defendant to represent himself.

*People v. Morris*, 2018 WL 3073762, at * 7.

Moreover, petitioner had previously been advised of his right to counsel and the disadvantages at the October 1, 2015 hearing and was again advised of the dangers of self-representation at the October 27, 2015 and November 5, 2015 hearings.

Under the circumstances, the Michigan Court of Appeals reasonably concluded that petitioner had been adequately advised of his right to counsel and the dangers of self-representation and had thus adequately waived his right to counsel. *See United States v. Clark*, 591 F. App'x. 367, 372 (6th Cir. 2014) (defendant's waiver of counsel was valid, where district court pressed defendant on his request, inquired whether he had any legal training, had ever tried a case, or had any familiarity with the Rules of Evidence, defendant displayed an understanding of the charges against him and the possible sentences and acknowledged he knew the facts of his case, court also cautioned on the consequences of self-representation and urged him to keep his appointed counsel, defendant persisted in his request, which he said he had voluntarily made, and court made statement that it could not "force" defendant to

keep his attorney because it had determined that he validly waived his right to counsel).

A valid waiver of counsel "remains in effect at subsequent proceedings in the absence of an explicit revocation by the defendant or a change of circumstances that would suggest that the [trial] court should make a renewed inquiry of the defendant." *United States v. McBride*, 362 F.3d 360, 367 (6th Cir. 2004); *See also United States v. Modena*, 302 F.3d 626, 630-31 (6th Cir. 2002) (federal district court judge was not required to reevaluate magistrate judge's acceptance of defendant's waiver of counsel due to fact that defendant later requested counsel, then reasserted his desire to proceed pro se). Because there is no indication that petitioner ever revoked his earlier waiver or requested representation, it was unnecessary for the judge to obtain a waiver of counsel from petitioner prior to the preliminary examinations or arraignments on the information on November 12, 2015 or at any of his subsequent hearings or trial, even though the judges subsequently did so.

Additionally, as the Michigan Court of Appeals reasonably concluded, by removing himself from the November 12, 2015 proceedings,

petitioner forfeited his right to counsel at these hearings. (The portion of the November 12, 2015 transcript in which petitioner asked to leave the courtroom prior to the preliminary examination can be found at ECF No. 13-7, PageID.770–75). There is no clearly established Supreme Court law demonstrating that such a right cannot be forfeited. *See Kammeraad v. Campbell*, No. 1:16-cv-00349, 2017 WL 5036751, at *9–11 (W.D. Mich. Aug. 29, 2017), *report and recommendation adopted by* 2017 WL 4962769, at *1 (W.D. Mich. Nov. 1, 2017) (holding that the state appellate court's determination that a defendant forfeited his right to counsel and his right to self-representation due to "the severity of his misconduct and his absolute refusal to participate in any manner in the proceedings" was not contrary to or an unreasonable application of clearly established federal law because no such law exists (quotations omitted)).  Petitioner is not entitled to relief on his claim.

Petitioner filed two motions for the appointment of counsel.

There is no constitutional right to counsel in habeas proceedings. *Cobas v. Burgess,* 306 F. 3d 441, 444 (6th Cir. 2002).  Because petitioner's claims lack merit, the Court will deny petitioner's request for the

appointment of counsel. *See Lemeshko v. Wrona*, 325 F. Supp. 2d 778, 788 (E.D. Mich. 2004).

## IV. CONCLUSION

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability to petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; *See also Strayhorn v. Booker,* 718 F. Supp. 2d 846, 875 (E.D. Mich. 2010).

For the reasons stated in this Opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. The Court will also deny petitioner leave to appeal *in forma pauperis*, because the appeal would be frivolous. *See Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

## V. ORDER

Based upon the foregoing, IT IS ORDERED that the Petition for a Writ of Habeas Corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED that the motions for the appointment of counsel (ECF No. 10, 11) are **DENIED.**

IT IS FURTHER ORDERED That a Certificate of Appealability is **DENIED.**

IT IS FURTHER ORDERED that Petitioner will be **DENIED** leave to appeal *in forma pauperis.*

 /s/Terrence G. Berg
**HONORABLE TERRENCE G. BERG**
Dated: 1/31/2020          **UNITED STATES DISTRICT JUDGE**